**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| JASON I. FARROW, | : |
| Plaintiff, | : Civil Case No. 09-1636(RBK) |
| v. | : **O P I N I O N** |
| CAPE MAY COUNTY SUPERIOR COURT CRIMINAL CASE MANAGEMENT, et al., | : |
| Defendants. | : |

**APPEARANCES:**

Jason I. Farrow, Pro Se
# 430233-765204B
Bayside State Prison
P.O. Box F-1-4293, Rt. 47
Leesburg, NJ 08327

**KUGLER, District Judge**

 Plaintiff, Jason I. Farrow, currently incarcerated at the Bayside State Prison, Leesburg, New Jersey, has filed a civil complaint alleging violations of his constitutional rights. Plaintiff paid the $350.00 filing fee. On June 1, 2009, Plaintiff filed an Amended Complaint. On July 24, 2009, Plaintiff submitted an application to proceed in forma pauperis, pursuant to 28 U.S.C. § 1915. Based on Plaintiff's affidavit of indigence and institutional account statement, the Court will grant his application to proceed in forma pauperis, pursuant to 28 U.S.C. § 1915(a).

At this time, the Court must review the amended complaint, pursuant to 28 U.S.C. § 1915A, to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  For the following reasons, Plaintiff's amended complaint will be dismissed.[1]

## BACKGROUND

Plaintiff seeks to sue a number of employees at the Superior Court of New Jersey, Cape May County, and public defenders, prosecutors, and parole officers.  He alleges that his court/trial process as well as official documents were "tainted with errors," and that the prosecutor "went beyond the proper scope of harmless error and the scope of the prosecutor's professional codes of conduct."  (Am. Complt., ¶¶ 1, 7, 8).

Plaintiff also suggests that "there is an extraordinary amount of uncertainty plaguing our Criminal Justice System and how it is structured."  Plaintiff argues that the "system is broke" and has "become professedly complacent with blacks not knowing the law and/or constitutional rights."  Plaintiff states there were problems with his entire case, and that all professionals involved in his case violated his rights.  (Am.

---

[1] This Court notes that the claims raised in Plaintiff's original complaint are embodied in Plaintiff's amended complaint.

Complt., ¶ 2). He states that there was a "preponderance of injustices" during his criminal proceeding. (Am. Complt., ¶ 8).

Plaintiff also complains that the jury selection process is problematic and unconstitutional. (Am. Complt., ¶ 3). For example, an open-ended question to jurors in his case concerning police officers' credibility was "problematic." (Am. Complt., ¶ 4). Also, Plaintiff asked jurors a religious question, and the jurors answered the question "correct" to get on the jury, but then jurors deliberated "in opposition to this question in violation of Plaintiff's rights." (Am. Complt., ¶ 6). Plaintiff further asserts that his right to equal protection was violated because he has more unconstitutional contact with police, presumably because of his race. (Am. Complt., ¶ 5).

More specifically, Plaintiff continues to explain that on March 10, 2007, he left his mother-in-law three messages of the dangers of going to court and lying under oath. He was arrested based on those messages. Plaintiff states the messages were left on advice of his attorney. He tried to contact the attorney after his release, and the attorney did not return his calls. (Am. Complt., ¶¶ 12-14).

After statements to the police, and a threat to the prosecutor to sue, Plaintiff's parole was revoked on an expedited basis. (Am. Complt., ¶¶ 15-16). Plaintiff's wife, "the victim" then brought a typewritten statement to Plaintiff's attorney,

which Plaintiff's attorney provided to the prosecutor, "breach[ing] his obligation to the plaintiff." The prosecutor then used that information against Plaintiff. (Am. Complt., ¶ 17).

On May 2, 2007, the parole board started the revocation process, and his parole was revoked "after 11 months out on bail." Plaintiff was arrested, and relieved his attorney of representation since he believed that the attorney and prosecutor were "combining efforts" against him. (Am. Complt., ¶¶ 19-20). Plaintiff claims that the parole board, and the named parole officer defendants "conspired to revoke Plaintiff's parole fraudulently" and that his parole was revoked "corruptly and in non-compliance with [New Jersey] law." (Am. Complt., pp. 10-11).

Plaintiff states that between March 10, 2007 and October 2007, the prosecutor overstepped her duties by being disrespectful, unprofessional, and malicious by telling Plaintiff's attorney to "shut up" several times in court and making fun of the attorney's stuttering. (Am. Complt., ¶ 21).

Plaintiff next elaborates on general inequities in the criminal justice system. (Am. Complt., ¶¶ 24-28). He then complains about the parole revocation process, and "acts of fraud against the Plaintiff, thus victimizing the Plaintiff criminally and violating the Plaintiff's constitutional rights to equal protection." (Am. Complt., ¶ 35).

Plaintiff asks for monetary and other relief. (Am. Complt., ¶ 7, "Relief").

## DISCUSSION

### A. Standard of Review

In 1996, Congress enacted the Prison Litigation Reform Act ("PLRA"), Title VIII of the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996). Congress's purpose in enacting the PLRA was "primarily to curtail claims brought by prisoners under 42 U.S.C. § 1983 and the Federal Torts Claims Act ... many of which are routinely dismissed as legally frivolous." Santana v. United States, 98 F.3d 752, 755 (3d Cir. 1996). A crucial part of the congressional plan for curtailing meritless prisoner suits is the requirement, embodied in 28 U.S.C. § 1915A, that a court must dismiss, at the earliest practicable time, actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.

In determining the sufficiency of a complaint, the Court must be mindful to construe the facts stated in the complaint liberally in favor of the plaintiff. See Haines v. Kerner, 404 U.S. 519 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). The Court should "accept as true all of the [factual] allegations in the complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to

5

the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). While a court will accept well-pled allegations as true, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. See id.

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, (1957), while abrogating the decision in other respects).

The Court of Appeals for the Third Circuit recently provided detailed and highly instructive guidance as to what type of allegations qualify as sufficient to pass muster under the Rule 8 pleading standard. See Phillips v. County of Allegheny, 515 F.3d 224, 230-34 (3d Cir. 2008). The Court of Appeals explained, in relevant part:

> [T]he pleading standard can be summed up thus: "stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element. This "does not impose a probability requirement at the pleading stage[ ]" but . . . "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element.

6

Phillips, 515 F.3d at 234 (internal citations omitted).  See also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (when assessing the sufficiency of a complaint, the Court must distinguish factual contentions- which allege behavior on the part of the defendant, that, if true, would satisfy one or more elements of the claim asserted- and "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements").

**B.   42 U.S.C. § 1983**

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his or her constitutional rights.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to establish a violation of 42 U.S.C. § 1983, a plaintiff must demonstrate that the challenged conduct was committed by (1) a person acting under color of state law and (2) that the conduct deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States.  See Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled in part on other grounds by Daniels v. Williams, 474 U.S. 327 (1986); Adickes v.

S.H. Kress & Co., 398 U.S. 144, 152 (1970); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

**C.     Plaintiff's Complaint Will Be Dismissed.**

    1.     Plaintiff's Claims Regarding Underlying Criminal Trial.

The majority of Plaintiff's complaints concern his underlying criminal case: the jury selection process, the conduct of attorneys during the trial, his knowledge of his rights during the trial, and his revocation of parole.  However, Plaintiff's claims are not properly raised in this civil rights complaint at this juncture.

In a series of cases beginning with Preiser v. Rodriguez, 411 U.S. 475 (1973), the Supreme Court has analyzed the intersection of 42 U.S.C. § 1983 and the federal habeas corpus statute, 28 U.S.C. § 2254.  The Court held that "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."  Id. at 500.

In Heck v. Humphrey, 512 U.S. 477 (1994), the Court addressed a corollary question to that presented in Preiser, whether a prisoner could challenge the constitutionality of his conviction in a suit for damages only under § 1983, a form of

relief not available through a habeas corpus proceeding. Again, the Court rejected § 1983 as a vehicle to challenge the lawfulness of a criminal judgment.

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has <u>not</u> been so invalidated is not cognizable under § 1983.

512 U.S. at 486-87 (footnote omitted). The Court further instructed district courts, in determining whether a complaint states a claim under § 1983, to evaluate whether a favorable outcome would necessarily imply the invalidity of a criminal judgment.

> Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will <u>not</u> demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

512 U.S. at 487 (footnotes omitted). The Court further held that "a § 1983 cause of action for damages attributable to an

9

unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." Id. at 489-90.

"Considering Heck and summarizing the interplay between habeas and § 1983 claims, the Supreme Court recently explained that, 'a state prisoner's § 1983 action is barred (absent prior invalidation) - no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) - if success in that action would necessarily demonstrate the invalidity of the confinement or its duration.'" Williams v. Consovoy, 453 F.3d 173, 177 (3d Cir. 2006) (quoting Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005)) (emphasis in original).

The claims asserted by Plaintiff regarding his underlying criminal proceedings, for which he seeks monetary relief, are the type of claims that would necessarily demonstrate the invalidity of his confinement. Accordingly, these claims have not yet accrued and must be dismissed, without prejudice. See Wallace v. Kato, 549 U.S. 384 (2007).[2]

---

[2] Plaintiff's claims regarding his parole revocation are also dismissible under the Heck line of cases. See Connolly v. Arroyo, 293 Fed. Appx. 175, 177-78, 2008 WL 4277012 (3d Cir. Sept. 18, 2008) (holding that Plaintiff's § 1983 claim for damages asserting that parole board and parole officials violated his constitutional rights in connection with his custody by sabotaging his revocation hearing and for other reasons was barred by Heck, because "[t]he duration of [Plaintiff's] confinement after he was arrested on the parole violator warrant has never been reversed on direct appeal, declared invalid by a

2.  <u>Defendants Not State Actors/Immune from Suit.</u>

Finally, this Court notes that defendants Gorny, Sittineri, Simone, and Patrick, as a public defenders and pool attorneys, are not a "state actor" for purposes of a § 1983 suit. <u>See</u> <u>Polk County v. Dodson</u>, 454 U.S. 312, 325 (1981) (holding that public defenders do not act under color of state law); <u>Steward v. Meeker</u>, 459 F.2d 669 (3d Cir. 1972) (privately-retained counsel does not act under color of state law when representing client); <u>Thomas v. Howard</u>, 455 F.2d 228 (3d Cir. 1972) (court-appointed pool attorney does not act under color of state law).

Furthermore, Defendants Taylor, DeWeese, and Johnson, as prosecutors, are immune from suit under § 1983. <u>See</u> <u>Imbler v. Pachtman</u>, 424 U.S. 409, 410 (1976) ("a state prosecuting attorney who act[s] within the scope of his duties in initiating and pursuing a criminal prosecution" is not amenable to suit under § 1983).

Because Plaintiff has not alleged facts indicating a constitutional violation, and because Plaintiff names defendants not subject to suit under § 1983, his complaint must be dismissed.

---

state tribunal, or called into question by a federal court's issuance of a writ of habeas corpus, and he, therefore, has not satisfied <u>Heck</u>'s favorable termination rule").

## **CONCLUSION**

Based upon the foregoing, Plaintiff's complaint will be dismissed for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. § 1915A(b)(1), and for seeking relief from immune defendants, pursuant to 28 U.S.C. § 1915A(b)(2).  The Court will file an appropriate order.

s/Robert B. Kugler
ROBERT B. KUGLER
United States District Judge

Dated: August 13, 2009